

03-CV-02534-PRAE

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| NEWPORT YACHT CLUB, a Washington nonprofit corporation, individually and on behalf of its members, WILLIAM S. WEINSTEIN and LEANNE C. WEINSTEIN, and their marital community, | NO. C03-2534Z |
| Plaintiffs, | AGREED ORDER OF DISMISSAL |
| v. | |
| THE CITY OF BELLEVUE, a Washington municipal corporation, and KING COUNTY, a political subdivision of the State of Washington, | |
| Defendants. | |

The parties have reached a settlement of the claims in this matter.  A copy of the Settlement Agreement is attached to this Order as Exhibit A.

The parties have requested that the Court dismiss this matter with prejudice, reserving jurisdiction to enforce the terms of this Order and the attached Settlement Agreement.  The Court has held a hearing for purposes of considering the reasonableness of taking that action.  Having reviewed the settlement agreement and considering the statements of the parties [and others] at

AGREED ORDER OF DISMISSAL - 1

Bricklin Newman Dold, LLP
Attorneys at Law
Fourth & Pike Building
1424 Fourth Avenue, Suite 1015
Seattle WA 98101-2217
Tel. (206) 621-8868
Fax. (206) 621-0512

1   the hearing, the Court is satisfied that the relief requested by the parties is appropriate.  The

2   Court finds that the settlement is fair, reasonable, and in accordance with the purposes of the

3   Clean Water Act, Resource Conservation and Recovery Act, and Endangered Species Act.

4   NOW, THEREFORE,

5

6       IT IS HEREBY ORDERED:

7       1)    This case is dismissed with prejudice and with each party to bear its own fees and

8   costs, except as provided for otherwise in the Settlement Agreement.

9       2)    The Court retains jurisdiction to enforce the terms and conditions of this Order,

10  including the Settlement Agreement attached hereto as Exhibit A, provided that the dispute

11  resolution provisions in Section 15 of the Settlement Agreement are initiated prior to seeking

12  Court enforcement of this Order or the Settlement Agreement.

13      Dated this 28 day of _OCTU_____, 2004.

14

15

16                                                      

17               THE HONORABLE THOMAS ZILLY
                UNITED STATES DISTRICT COURT JUDGE

18  Presented by:

19

20  BRICKLIN NEWMAN DOLD, LLP

21

22  By:

23      David A. Bricklin
      WSBA No. 7583

24      Attorneys for William and Leanne Weinstein

25

26

AGREED ORDER OF DISMISSAL - 2

Bricklin Newman Dold, LLP
Attorneys at Law
Fourth & Pike Building
1424 Fourth Avenue, Suite 1015
Seattle WA 98101-2217
Tel (206) 621-8868
Fax. (206) 621-0512

1  Approved as to form:

2  SHORT CRESSMAN & BURGESS, PLLC

3

4

5  By: _____

6  John J. Houlihan, Jr.
   WSBA No. 30285

7  Attorneys for Newport Yacht Club

8  GRAHAM & DUNN

9

10 By: _____

   Elaine L. Spencer
11 WSBA No. 6963

12 Attorneys for City of Bellevue

13

   NORM MALENG
14 KING COUNTY PROSECUTING ATTORNEY

15

16 By: _____

17 Joseph B. Rochelle
   WSBA No. 26978

18 Attorneys for King County

19 Weinstein\USDC\Agreed Order of Dismissal

20

21

22

23

24

25

26

AGREED ORDER OF DISMISSAL - 3

Bricklin Newman Dold, LLP
Attorneys at Law
Fourth & Pike Building
1424 Fourth Avenue, Suite 1015
Seattle WA 98101-2217
Tel. (206) 621-8868
Fax. (206) 621-0512

## SETTLEMENT AGREEMENT

This Settlement Agreement and Release ("Agreement") is entered into this 6th day of August, 2004 by and between The Newport Yacht Club, Inc., a Washington corporation ("NYC"), William S. Weinstein and Leanne C. Weinstein and their marital community (Weinstein), the City of Bellevue, Washington ("City") and King County, Washington ("County").

## RECITALS

WHEREAS, on August 11, 2003 NYC and Weinstein filed suit in King County Superior Court against the City and County in the action styled *Newport Yacht Club and William S. and Leanne C. Weinstein v. The City of Bellevue and King County*, Cause No. CO3-2534 seeking damages, declaratory and injunctive relief concerning impacts arising from Coal Creek. A copy of the complaint is attached as Exhibit A (the "Operative Complaint").

WHEREAS, the City and County have answered and denied all liability alleged in the Operative Complaint; and

WHEREAS, the parties wish to resolve the dispute without further litigation cost or expense.

NOW THEREFORE, in consideration of the forgoing and the mutual promises, covenants and conditions set forth below and for other good and valuable consideration the receipt and sufficiency of which is hereby acknowledged, the parties agree as follows.

## AGREEMENT

## 1. REVIEW AND APPROVAL OF AGREEMENT

1.1. City and County Council Approvals:  A condition precedent to the City and County's obligations herein is the review and approval of this Agreement by the City Council and the County Council.  Upon execution of this Agreement the City and County will promptly take such necessary actions to secure approval from the City Council and County Council  to effectuate the terms and conditions of this Agreement.

1.2. NYC Approval:  Upon execution of this Agreement, NYC shall promptly transmit a copy of this Agreement to its membership with a notice of the Settlement Hearing contemplated in Section 13.2 below.

## 2. CITY AND COUNTY PROPERTY TRANSFERS AND SETTLEMENT PAYMENTS

2.1. Legislative Action:   Upon or in conjunction with the City Council and County Council approvals set forth in Section 1.1 above, the City and County shall take all necessary administrative or legislative actions necessary to effectuate the terms and conditions of

m28918-523563.2.doc
512255.1/018710.00006

**EXHIBIT A**

this Agreement including, without limitation, the real estate transfers and settlement payments required herein.

2.2. County Transfer of Coal Creek Park and Surrey Downs Building to City:

    2.2.1. Title Transfer: On or before November 15, 2004, the County shall transfer to the City title to the real estate commonly referred to or known as "Coal Creek Park" and the "Surrey Downs" property and more particularly described in Exhibit B hereto.

    2.2.2. Operation & Maintenance: Upon transfer of title, the City shall be solely responsible for all operation and maintenance of Coal Creek Park and Surrey Downs, except for the district court building and facilities. The County shall retain the operation and maintenance obligations of the district court building and facilities.

    2.2.3. District Court Building & Facilities: The County shall retain use of the Surrey Downs district court building and facilities rent-free through December 31, 2006. The City and County shall enter into such agreements as necessary to effectuate the County's use, occupancy maintenance and operations of the district court buildings and facilities.

    2.2.4. Revenue Streams: Upon transfer of title, the City shall collect and retain all income streams derived from or associated with Coal Creek Park and Surrey Downs except for any revenue derived from the district court building and facilities. The County shall execute such documents as necessary to effectuate the assignment or redirection of such revenue to the City.

    2.2.5. Indemnification: The City shall defend, indemnify and hold harmless the County from and against any and all third party claims, demands, actions, suits, judgments, losses, damages, costs or expenses including without limitation reasonable attorney fees and costs which concern, refer, relate to or arise from Coal Creek Park and which first arise on or after the date title to Coal Creek Park is transferred to the City. The County shall defend, indemnify and hold harmless the City from and against any and all third party claims, demands, actions, suits, judgments, losses, damages, costs or expenses including without limitation reasonable attorney fees and costs which concern, refer, relate to or arise from Coal Creek Park and which first arise before the date title to Coal Creek Park is transferred to the City.

## 3. COUNTY – CITY ALLOCATION OF SETTLEMENT PAYMENTS

3.1. Coal Creek Stabilization Payment: Within ten days of the date of Court approval of this Agreement as provided for in paragraph 13.2 below, the County shall pay to the City Two Million One Hundred and Fifty Thousand Dollars ($2,150,000) less a credit for County funds spent on approved work on overbank erosion in Cinder Mine area. This payment represents the County's portion of costs for Coal Creek Stabilization Project (the "CCSP") attached hereto as Exhibit C.

- 2 -

3.2. <u>EIS Payment</u>: Within ten days of the date of Court approval of this Agreement as provided for in paragraph 13.2 below, the County shall pay to the City Two Hundred and Fifty Thousand Dollars ($250,000) as the County's contribution toward the Environmental Impact Statement ("EIS") for the CCSP attached hereto as Exhibit C.

3.3. <u>Attorney Fee Payment</u>: The County shall contribute Seventy-Five Thousand Dollars ($75,000) and the City shall contribute Twenty Five Thousand Dollars ($25,000) to the attorney fees payment required by Section 10 below.

## 4.   COAL CREEK STABILIZATION PROJECT.

4.1. <u>Implementation</u>: The City will implement the CCSP attached as Exhibit C. The City shall be solely responsible for all implementation and permitting activities for the CCSP. The County shall, however, cooperate with the City and support as necessary the CCSP which cooperation and support shall include without limitation consenting to the release to third parties of information necessary for the EIS and permit application processes which may be currently subject to a "Joint Defense Privilege" between the City and County.

4.2. <u>Increased Sediment Capture Volume</u>: The sediment removal capacity outlined in the CCSP shall be increased by four hundred (400) cubic yards to a total capacity of one thousand five hundred (1,500) cubic yards at or near the existing I-405 pond or other locations that are acceptable to the City.

4.3. <u>Permitting</u>:

4.3.1.   <u>Contingency</u>: The City's obligation to implement any portion of the CCSP is contingent upon receipt of all required permits and third-party approvals for that portion. The City's work shall be prosecuted as a single project under a single programmatic EIS process, and to the extent possible, under a single permit application.

4.3.2.   <u>Timely Response to Permitting Agencies</u>: The City shall respond to regulatory agency requests for additional information within thirty (30) days unless the request requires the City to develop information which is not in its care, custody or control at the time of the request.

4.4. <u>Cooperation, Co-Applicants and Non-Opposition</u>:

4.4.1.   <u>Cooperation & Non-Opposition</u>: NYC, Weinstein and the County shall support and shall not oppose the City's permit application and programmatic EIS for the CCSP.

4.4.2.   <u>Co-Applicants</u>: NYC and/or Weinstein may be co-applicants on the City's permit applications for all or any portion of the CCSP.  NYC and Weinstein shall not use

- 3 -

the status of co-applicant to oppose or otherwise impede the City's permitting for the CCSP. NYC and Weinstein shall each bear their own costs of participating as co-applicants and the co-applicant status of Weinstein and NYC shall be at no cost to the City.

4.4.3.  Technical Review & Comment:  The City will provide NYC and / or Weinstein's experts with a reasonable opportunity to review with the City and comment concerning modifications, changes and enhancements to the CCSP work to the extent such changes or enhancements do not increase the overall cost of the specific proposed tasks.

4.5. Source Control Budget Cap:  For the "source control" items listed on Exhibit C, the corresponding line item dollar amount represents the maximum dollar amount the City is obligated to expend for that project inclusive of design, permitting and construction costs but excluding the cost of a the programmatic EIS in Section 4.3 above. The City's charges against the line item budget amounts set forth in Exhibit C shall be limited to reasonable and customary costs for capital improvement projects.

4.6. WSDOT Cooperation:  The parties shall work cooperatively and in good faith to have the Washington Department of Transportation ("WSDOT") allocate monies to improve storm water detention and/or sediment capture capacity at the I-405/Coal Creek Parkway exchange in conjunction with WSDOT projects which may impact Coal Creek.

4.7. Milestones and Schedule:

4.7.1.  Milestones:  Within thirty (30) days of the date of this Agreement, the City, NYC and Weinstein shall develop and agree upon a list of key milestones and submittals for the overall CCSP project.

4.7.2.  Schedule:  Within thirty (30) days of the date of this Agreement, the City, NYC and Weinstein shall agree upon a schedule for implementation of the agreed milestones and/or submittals up to and including the preparation of the programmatic EIS and Joint Aquatic Resource Permits Application ("JARPA") submittals.

4.7.3.  Disputes:  If the City, NYC and Weinstein cannot agree upon the milestones and submittals and the implementation schedule, then the City, NYC and Weinstein shall mediate the dispute before William F. Joyce of WAMS. The mediation shall be convened on an expedited basis with each participant bearing a per capita share of the mediator's fees.

5.  **CITY'S FLOOD CONTROL AND SEDIMENT MANAGEMENT OPERATION AND MAINTENANCE DUTIES**

The City shall operate and maintain the existing flood control and sediment management facilities and the proposed CCSP and/or any Replacement Work (as defined in Section 12

- 4 -

below) that the City is obligated to construct in the Coal Creek basin from and including Coal Creek Park to the waters of Lake Washington.

## 6. FLOOD CONTROL BERM & SALMON CHANNEL

6.1. Flood Control Berm: Weinstein shall design, obtain permits for, construct, and maintain a flood control berm on the Weinstein Property along the south bank of Coal Creek (the "Berm"). The "Weinstein Property" is more particularly described in Exhibit D attached hereto. The design of the Berm and the permit application for the Berm may include raising the level of the yard on the Weinstein Property to match the Berm height. Any raising of such yard level shall not be paid for from the funds referred to in subsection 6.4 below. NYC may be a co-applicant on the Berm permit application.

6.2. Salmon Channel: Weinstein shall design, obtain permits for, construct, and maintain an environmentally beneficial salmon enhancement channel at the mouth of Coal Creek to assist in salmon passage across the Coal Creek delta (the "Salmon Channel"). NYC may be a co-applicant on any such permit application.

6.3. Permitting: Weinstein's obligations under Section 6.1 and 6.2 are contingent upon receipt of all third party permits and approvals for the Berm and Salmon Channel. Weinstein may combine the permitting and design for the Berm and Salmon Channel (or Replacement Work as defined in Section 12 below) with the permitting and design for the Salmon Habitat Enhancement set forth in Section 7 below.

6.4. County Payment: Within ten (10) days of the Order dismissing the Operative Complaint as set forth in Section 13 below or on November 5, 2004, whichever is later, the County shall pay to Weinstein Two Hundred and Fifty Thousand Dollars ($250,000) towards the cost to design, obtain permits for, construct, and maintain the Berm, Salmon Channel, or any Replacement Work (as defined in Section 12 below). The County's payment will be direct deposited into the interest bearing escrow account provided for in Section 11 below (the "Berm/Salmon Channel Escrow"). Weinstein may draw down on the Berm/Salmon Channel Escrow to pay for the costs to design, permit, construct, operate and maintain the Berm and Salmon Channel or Replacement Work (as defined in Section 12 below).

6.5. City and County Cooperation and City Permits:

6.5.1. Cooperation: Subject to the Berm and Salmon Channel permits complying with applicable provisions of the Bellevue City Code, the City shall cooperate with Weinstein in securing such permits. The City and the County shall not oppose Weinstein's permit applications to any permitting agencies.

6.5.2. City Permits: The City may charge Weinstein only reasonable and ordinary permitting costs. In the event Weinstein's permit application(s) result in a final DNS determination under SEPA (or if an administrative appeal is filed, upon the DNS being affirmed) or upon publication of an FEIS and upon receipt of a complete

m28918-523563.2.doc
512255.1/018710.00006

permit application, then the City will undertake to issue its permits for such work in a time frame which is no longer than the average time frame for an average shoreline permit pending in the City of Bellevue (currently estimated at 20 weeks). Subject to applicable provisions of the Bellevue City Code, the City shall defer to the review, recommendations and determinations of other permitting agencies in evaluating Weinstein's permit applications.

## 7. SALMON HABITAT ENHANCEMENT PROJECT

7.1. The Project: Weinstein may design, obtain permits for, construct, and maintain a salmon habitat enhancement project (s) ("SHEPs") in, on and around the Weinstein Property and the Weinstein North Property (which is more particularly described in Exhibit E attached hereto). The cost of constructing, operating and maintaining such SHEPs will be at Weinstein's sole cost and expense.

7.2. Non-Opposition: Subject to any such SHEPs complying with applicable Bellevue City Code provisions, the City and County shall not oppose Weinstein's development of any SHEPs in and around the Weinstein Properties at the mouth of Coal Creek.

7.3. Technical Data Usage: The City and County shall make available and allow Weinstein to use any technical data, reports, or other documents as have been or may be prepared for the City or County in connection with the CCSP. The City and County shall not charge Weinstein for the value or use of such materials, or the cost to develop them.

7.4. City Permitting: The City may charge Weinstein only reasonable and ordinary permitting costs. Subject to the SHEP permit(s) complying with applicable provisions of the Bellevue City Code, the City shall cooperate with Weinstein in securing such permits. In the event any permit application(s) results in a final DNS determination under SEPA (or if an administrative appeal is filed, upon the DNS being affirmed) or upon publication of an FEIS and upon receipt of a complete permit application, then the City will undertake to issue its permits for such work in a time frame which is no longer than the average time frame for an average shoreline permit pending in the City of Bellevue (currently estimated at 20 weeks). Subject to applicable provisions of the Bellevue City Code, the City shall defer to the review, recommendations and determinations of other permitting agencies in evaluating Weinstein's permit applications.

## 8. CITY ORDINANCE ENFORCEMENT ACTION AND VEGETATION ORDER

8.1. Rockery Removal: Within sixty (60) days of the earlier of issuance of the permits for the Berm and Salmon Channel or issuance of permits for the CCSP, Weinstein will remove the rocks in the area shoreward of the X shown on Exhibit G unless the rocks are re-used or removed pursuant to the permits issued for the Berm or Salmon Channel.

8.2. Dismissal of City Code Action: Within thirty (30) days of entry of the Order dismissing the Operative Complaint as set forth in Section 13 below, the City shall dismiss with

- 6 -

prejudice its pending code compliance enforcement action against Weinstein concerning the alleged placement of berming materials on the Weinstein Property from the east edge of the Weinstein Property to the X shown on Exhibit G, and will dismiss without prejudice the enforcement action as to alleged fill with rocks shoreward/downstream of that point.  If the alleged fill shoreward/downstream of the X noted on Exhibit G is either permitted by the permit for the Berm or Salmon Channel, or if Weinstein removes such rockery within sixty (60) days of the earlier of issuance of the Berm and Salmon Channel permits or issuance of permits for the CCSP, then the City will not pursue an enforcement action against Weinstein related to that alleged fill.  If the City is authorized by this section to pursue later the portion of the enforcement action dismissed without prejudice, the subsequent enforcement action will relate back to the date of the filing of the enforcement action being dismissed.

8.3.  Vegetation Order:  Within thirty (30) days of the Order dismissing the Operative Complaint as set forth in Section 13 below, the City shall inspect the vegetation on the Weinstein North Property and, if warranted, shall provide a certification that as of the inspection date, Weinstein is in compliance with that certain City Order 99-005968 EA concerning maintenance of vegetation on the Weinstein North Property and if Weinstein is in compliance the City will promptly terminate the Order and dismiss any enforcement action concerning such Order.

8.4.  Red Tag Removal:  Within fourteen (14) days of the date of the Order dismissing the Operative Complaint as set forth in Section 13 below, the City will lift, remove or otherwise terminate the current "red tag" on the Weinstein Properties.

## 9.  DREDGE PAYMENTS AND PERMITS

9.1.  $60,000 Marina Re-Dredge Payment:  Within ten (10) days of the Order dismissing the Operative Complaint set forth in Section 13 below or on November 5, 2004, whichever is later, the City and County shall each pay directly to NYC Thirty Thousand Dollars ($30,000) (for a total payment of Sixty Thousand Dollars ($60,000)) to be used for dredging in the marina.  NYC shall segregate the $60,000 from its general funds and apply the funds only to re-dredging costs incurred in the NYC marina.

9.2.  $700,000 Dredge Payment:

9.2.1.  Payment:  Within ten (10) days of the Order dismissing the Operative Complaint set forth in Section 13 below or on November 5, 2004, whichever is later, the City shall pay Seven Hundred Thousand Dollars ($700,000) to NYC for future navigation maintenance dredging costs.  The $700,000 payment will be direct deposited into an interest bearing escrow account at Stewart Title Insurance Company (the "Dredge Escrow") and shall be subject to the provisions of Section 11 below.

9.2.2.  Use of $700,000:  The decision of whether, where and when to dredge the areas specified in this sub-section shall be in NYC's sole and absolute discretion.  NYC

- 7 -

shall draw down on the Dredge Escrow to pay for the costs to design, permit, construct, and otherwise conduct navigation maintenance dredging in the following specified areas:

(a) NYC marina;
(b) entrance to Grand Canal;
(c) south side of D dock at the NYC Marina; and
(d) the edges of the Coal Creek Delta for navigational maintenance dredging.

NYC shall not construct boat slips on the south side of D dock as a consequence of the dredging.   The authorized dredging costs may include, without limitation, design, permitting, engineering, legal, construction, consulting, mitigation and monitoring costs.

9.3. <u>City Permitting</u>:  The City may charge NYC only reasonable and ordinary permitting costs.  Subject to any future dredge permits complying with applicable provisions of the Bellevue City Code, the City shall cooperate with NYC in securing such permits as required to perform future dredges.   In the event any such future dredge permit applications result in a final DNS determination under SEPA (or if an administrative appeal is filed, upon the DNS being affirmed) or upon publication of an FEIS and upon receipt of a complete permit application, then the City will undertake to issue its permits for such dredges in a time frame which is no longer than the average time frame for an average shoreline permit pending in the City of Bellevue (currently estimated at 20 weeks).  Furthermore, subject to applicable provisions of the Bellevue City Code, the City shall defer to the review, recommendations and determinations of other permitting agencies in evaluating NYC's permit applications.

9.4. <u>Non-Opposition</u>: The City and the County shall not oppose NYC's dredge permit applications to any permitting agencies.

## 10. ATTORNEY FEES REIMBURSEMENT

Within ten (10) days of the date of the Order dismissing the Operative Complaint set forth in Section 13 below or on November 5, 2004, whichever is later, the City and County collectively shall pay to NYC Twenty Five Thousand Dollars ($25,000) and shall pay to Weinstein Seventy Five Thousand Dollars ($75,000) in reimbursement of attorney fees and costs incurred in this action, with the total payment of One Hundred Thousand Dollars to be allocated between the City and County as described in paragraph 3.3 above.

## 11.    BERM/SALMON CHANNEL & DREDGE ESCROW ACCOUNTS

11.1.    <u>Establishment of Escrow Accounts</u>: Within ten (10) days of the date of the Order dismissing the Operative Complaint as set forth in Section 13 below, Weinstein and NYC shall establish the Berm/Salmon Channel and Dredge Escrow accounts required in Section 6.4 and 9.2 above with Stewart Title Company. The escrow accounts shall bear interest and any such interest payments shall be retained in the respective escrow

- 8 -

account. Any fees or costs associated with the establishment or maintenance of the escrow accounts shall be paid from the funds maintained in the escrow accounts.

11.2.     Escrow Instructions: The Berm/Salmon Channel and Dredge Escrow Accounts shall be maintained and managed in accordance with their respective Escrow Instructions attached hereto and incorporated herein as Exhibit F.

    11.2.1. Berm/Salmon Channel Mandatory Escrow Instructions:     The instructions concerning draws on the Berm/Salmon Channel escrow account shall require that:

        (a)     payment or reimbursement of appropriate invoices shall be made within sixty (60) days of submission;

        (b)     the form of draw request shall be in letter format with backup documentation (invoices etc.) and conform to Stewart Title Co.'s general escrow draw requirements and standard forms; and

        (c)     escrow funds shall be dedicated to payment of Berm, Salmon Channel and any Replacement Work (as defined in Section 12 below).

    11.2.2. Dredge Mandatory Escrow Instructions:   The instructions concerning draws on the Dredge Escrow account shall require that:

        (a)     payment or reimbursement of appropriate invoices shall be made within sixty (60) days of submission;

        (b)     the form of draw request shall be in letter format with backup documentation (invoices etc.) and conform to Stewart Title Co.'s general escrow draw requirements and standard forms; and

        (c)     escrow funds shall be dedicated to payment of dredging costs in the areas designated in Section 9.2.2 above.

## 12.     REPLACEMENT WORK

12.1.     Permits Condition Precedent to Work:  The City's obligations under Section 2 above and Weinstein's obligations under Section 6 above are contingent upon receiving all necessary third-party permits and approvals.

12.2.     Failure to Obtain Permits and Approvals / Replacement Work:  If the City fails to obtain a third-party permit or approval for all or any portion of the CCSP or if Weinstein fails to obtain a third-party permit or approval for all or any portion the Berm or Salmon Channel, then the releases, covenant-not-to-sue and indemnity provided for in Section 14 below shall remain in full force and effect, but the City, NYC and Weinstein shall negotiate in good faith to decide upon acceptable replacement work.  Replacement work shall be of like kind to the original work for which permits or approvals were not obtained, and shall be reasonably and technically feasible ("Replacement Work").  The cost of Replacement Work for the CCSP or any component thereof shall be capped by the associated line item budget amount set forth in Exhibit C and shall not increase the projected maintenance costs of such line item.

- 9 -

12.3.     Failure to Select Replacement Work / Binding Arbitration:  If the City, NYC and
Weinstein cannot agree on Replacement Work, then they shall submit the issue for
resolution by binding arbitration in accordance with the King County Mandatory
Arbitration Rules. The City, NYC and Weinstein shall select a mutually acceptable
arbitrator and if the parties cannot agree upon an arbitrator then the arbitrator shall be
selected by William F. Joyce of WAMS in his sole discretion.  Any fees and costs
charged by Mr. Joyce to make such selection shall be allocated among the disputing
parties on a per capita basis.

## 13. DISMISSAL OF OPERATIVE COMPLAINT

13.1.     Order of Dismissal:  This Agreement shall be incorporated into a stipulated order
to be executed by Judge Zilly (the "Order").  The Order shall dismiss the Operative
Complaint with prejudice and with each party to bear their own fees and costs.  The
Order will provide that the Federal Court shall retain jurisdiction to enforce the terms
and conditions of the Order and this Agreement and shall further provide that the dispute
resolution provisions of Section 15 below shall be initiated prior to seeking Court
enforcement of the Order.

13.2.     Settlement Hearing:  The parties shall stipulate to the submission of this
Agreement and the proposed Order to the Court and shall request a hearing for the
Court's final review and approval of this Agreement and entry of the Order (the
"Settlement Hearing").  The Settlement Hearing shall be set on a date at least sixty  (60)
days after submission of the Agreement by stipulation.  The date for the Settlement
Hearing may be extended at the request of the County an additional thirty (30) days to
allow the County Council sufficient time to review and act upon the provisions of the
Settlement Agreement.

## 14. RELEASE, COVENANT NOT TO SUE AND INDEMNITY

14.1.     Release of NYC and Weinstein Past/Existing Claims:  NYC and Weinstein
hereby release, waive and forever discharge the City and County from any and all
claims, suits, liabilities (including but not limited to strict liabilities), administrative or
judicial actions or proceedings, obligations, debts, damages, losses, costs, expenses,
fines, penalties, charges, fees, expenses, litigation costs, attorneys' fees, engineers' fees,
environmental consultants' fees, and investigation costs, of whatever kind or nature, and
whether or not incurred in connection with any judicial or administrative proceedings
which concern, refer or relate to the claims NYC and Weinstein brought or could have
brought in the Operative Complaint based upon the facts alleged in the Operative
Complaint.  Except for claims seeking or related to navigational access and/or dredging,
NYC's release herein does not extend to claims, whether founded in tort, common law,
statute, or otherwise, that an individual homeowner may have concerning damage to
their individual real property (e.g. their homes, lots, pools etc.) arising from Coal Creek
(e.g. flooding).

- 10 -

14.2.     NYC Covenant Not To Sue for Future Claims:  For the period forty (40) years after entry of the Order dismissing the action, NYC hereby covenants not to sue the City or the County for: (a) any future claims that NYC could bring for damage to its property or property for which it has management responsibility, Clean Water Act violations, RCRA violations or ESA violations arising from  facts like those alleged in the Operative Complaint, including without limitation re-sedimentation; and (b) any future claims for maintenance dredging to protect NYC's property or property it manages concerning or arising from  facts like those alleged in the Operative Complaint.  Except for claims seeking or related to navigational access and/or dredging, the parties specifically acknowledge that the covenant not to sue is provided by NYC and is not intended to encompass the individual claims of NYC members, whether founded in tort, common law, statute or otherwise, concerning damage to their individual real property (e.g. their homes, lots, pools etc.) arising from Coal Creek (e.g. flooding).

14.3.     Covenant Not to Sue for Weinstein Future Claims:  As to the Weinstein's claims as individuals and property owners, Weinstein, the Spendthrift Trust(s) holding title to the Weinstein Properties, and the successors in interest and assigns of each, covenant not to sue the City and County for any future claims, including damage claims resulting from re-sedimentation of Coal Creek, arising from actions, inactions or events like those alleged in the Operative Complaint.  Upon closing a fully executed version of the Covenant Not To Sue attached hereto as Exhibit H shall be recorded with the King County Auditor.

14.4.     NYC Defense and Indemnification of the City and the County:

14.4.1. Defense and Indemnity:  During the time period of the covenant not to sue in Section 14.2 above, NYC shall defend and indemnify the City and the County from and against claims by members of NYC for their personal claims which seek or relate to navigational access and/or dredging that concern or are derived from damage to the Club's property or damage to the individual's interest in the Club's property or property the Club manages, arising out of  facts like those alleged in the Operative Complaint.

14.4.2. Indemnity Claim Procedure:

14.4.2.1.  Notice Of Claim:  Promptly after receipt by the City and/or County of notice of any demand or claim or the commencement (or threatened commencement) of any action, proceeding or investigation by a resident of Newport Shores which may fall within the indemnity afforded by Section 14.2 above the City and/or County shall give written notice to NYC (a "Claim Notice").  The Claim Notice shall describe, to the extent known, the claim and amount in controversy (or an estimate) in reasonable detail, provide the name and contact information for the claimant, and any relevant time deadlines such as dates of service of process and dates to answer or otherwise plead to a complaint.

- 11 -

14.4.2.2. <u>Claim Response</u>: Within fifteen (15) days of receipt of a Claim Notice, NYC shall notify the City and/or the County in writing if NYC accepts, accepts with a reservation of rights or rejects the tendered claim (the "Claim Response"). If NYC accepts the tendered claim or agrees to defend under a reservation of rights, (an "Accepted Claim"), then NYC shall have the right to control the defense thereof and may elect to compromise or defend the Accepted Claim at its expense with counsel of its choice provided that such counsel is reasonably acceptable to the City and/or the County .

14.4.2.3. <u>City and County Cooperation and Participation</u>: The City and/or the County shall cooperate in the defense against and compromise of an Accepted Claim. The City and/or the County may participate in the defense or compromise of an Accepted Claim at its own expense. The City and/or the County shall make available to NYC any books, records, or other documents in its care, custody or control and the reasonable assistance of its personnel in the defense and compromise of an Accepted Claim.

14.4.2.4. <u>Compromise of Accepted Claims</u>: NYC shall not compromise any Accepted Claim without the City's and/or the County's prior written consent, which shall not be unreasonably withheld, conditioned or delayed. Any compromise of an Accepted Claim shall, to the extent practicable, include a full and complete release of such claim and shall not serve as an admission of fact, law or liability.

## 15. DISPUTE RESOLUTION

15.1. <u>Informal Good Faith Negotiation</u>: The parties agree to make all reasonable efforts to resolve through informal, good faith negotiations any disputes concerning the terms and conditions or performance of this Agreement. The informal negotiation period shall begin upon receipt by the party with which there is a claimed dispute of written Request for Negotiation and shall last a minimum of twenty (20) days and may be extended by written agreement of the parties to the negotiation. A Request for Negotiation shall set forth with reasonable specificity the factual basis for the claimed dispute. If a party serves a Request for Negotiation, that party shall promptly respond in good faith and in detail to any request for additional information or clarification from the party on whom the Request for Negotiation is served. The twenty-day minimum period for negotiations shall be tolled during any period when a request for additional information or clarification is pending, or when the parties are unable to meet to negotiate because of bona fide schedule conflicts. If the parties to the negotiation reach impasse, they may waive in writing the remainder of the informal negotiation period.

15.2. <u>Condition Precedent to Court Action</u>: The informal negotiation period is a condition precedent to the filing of any action for Court enforcement of this Agreement or the Order set forth in Section 13 above. Any action to enforce the terms and conditions of this Agreement or the Order set forth in Section 13 above shall include a certification by the party seeking relief that the provisions of Section 15.1 were satisfied.

- 12 -

## 16. ENFORCEMENT

In any action to enforce the terms and conditions of this Agreement or the Order set forth in Section 13 above, the prevailing party shall be awarded its reasonable attorney fees and costs. The Court shall determine in its discretion the prevailing party for purposes of an attorney's fees award.

## 17. MISCELLANEOUS

17.1.     Advice of Counsel: Each party signing this Agreement expressly represents and warrants that it has had the opportunity to seek the advice of counsel concerning the settlement and the terms and conditions of the settlement agreement prior to its execution. This settlement agreement shall be deemed to have been prepared jointly by the parties and to the extent any uncertainty or ambiguity exists concerning its terms, such uncertainty or ambiguity shall not be construed against any party as the author or the drafter of the settlement agreement.

17.2.     Authority: Subject to the Condition Precedent set forth in paragraph 1.1 above, the undersigned persons executing this Agreement represent and warrant they are authorized to enter into and execute the Agreement.

17.3.     Integration: This Agreement, including the schedule referenced in paragraph 4.7.2, contains the entire understanding of the parties with respect to the subject matter hereof, shall not be modified or amended in any way except by a writing signed by all the parties hereto.   It supersedes and replaces all prior negotiations, agreements or representations, whether oral or written.

17.4.     Applicable Law: This Agreement and interpreted under the laws of the state of Washington. Venue for any cause of action arising out of or relating to this Agreement shall be in United States District Court for the Western District of Washington.

17.5.     Severability:   If any provision of this Agreement is deemed unlawful or unenforceable, such provision(s) shall be fully severable, the remainder of this Agreement shall be in full force or effect with the automatic addition of a provision as similar in its terms to such a legal or unenforceable position as may be possible to make such provision legal and enforceable.

17.6.     Original Counterparts:   This Agreement may be executed in one or more counterparts, and by facsimile, each of which shall be deemed an original.

17.7.     Notice:

All notices to be given pursuant to this Agreement shall be in writing and furnished to the other party at its address listed below (or at such other address as may be specified from time to time by notice from the addressee to the other party) and shall be deemed to have been duly given the day delivered to the addressee at the address below or transmitted by

- 13 -

confirmed facsimile transmission to the addressee at the facsimile number below, or three (3) days after having been sent by regular and certified or registered U.S. mail, postage prepaid to addressee at the address below:

If to NYC:

> Newport Yacht Club
> Attn: Commodore
> 81 Skagit Key
> Bellevue, WA 98006
> Fax: (425) 747-4023

> > with a copy to:

> > Paul Cressman, Jr.
> > John J. Houlihan, Jr.
> > Short Cressman & Burgess PLLC
> > 999 Third Avenue, Suite 3000
> > Seattle, WA 98104-4088
> > Fax: (206) 340-8856

If to Weinstein:

> William S. Weinstein
> 73 Skagit Key
> Bellevue, WA 98006
> Fax: (206) 269-3489

> > with a copy to:

> > David A. Bricklin, Esq.
> > Bricklin Newman Dold
> > 1424 Fourth Avenue, Suite 1015
> > Seattle, WA 98101
> > Fax: (206) 621-0512

If to City:

> Myrna Basich
> City Clerk
> City of Bellevue
> 11511 Main Street
> Bellevue, WA 98009-9012
> Fax: (425) 452-7919

> > with a copy to:

- 14 -

08/04/04

Elaine Spencer
Graham & Dunn
Pier 70
2801 Alaskan Way, Suite 300
Seattle, WA 98121
Fax: 206-340-9599

If to County:

Mark Isaacson
Department of Natural Resources and Parks
King Street Center
201 South Jackson Street, Suite 600
Seattle, Washington 98104-3855
Fax: 206-296-0192

with a copy to:

Joseph Rochelle, Esq.
Office of King County Prosecuting Attorney
900 King County Administration Building
500 Fourth Avenue
Seattle, Washington 98104
fax: 206-296-0421

Such communications shall be deemed received on the earlier of the date of actual receipt or upon automatic or telephone confirmation of receipt by facsimile. Each party to this Agreement may change its notice address set forth in this Section by giving notice of a new address to the other party in accordance with this Section.

17.8.     Cooperation:  The parties shall reasonably cooperate with each other to effectuate the terms, conditions and intent of the Agreement, including, without limitation, obligations to execute such documents as necessary to effectuate the terms and conditions and intent of this Agreement.

Accepted and Agreed this ___ day of August, 2004:

William Weinstein

Leanne Weinstein

- 15 -

08/04/04

The Newport Yacht Club, Inc.

By: _____ Past Commodore and Authorized Agent
~~Steve Cole, Commodore~~
Lawrence M. Kahn on Behalf of and for Newport Yacht Club Board of Governors

City of Bellevue

By: _____
     Steven Sarkozy, City Manager

King County

By: _____     Approved as to form: _____

m28918-523563.2.doc
512255 i-918710.00006

08/04/04

The Newport Yacht Club, Inc.

By: _____
      Steve Cole, Commodore

City of Bellevue

By: _____
      Steven Sarkozy, City Manager

King County

By: _____

**Approved as to form:**

_____
**Assistant City Attorney**

Approved as to form: _____

- 16 -

The Newport Yacht Club, Inc.

By: ............................................................

    Steve Cole, Commodore

City of Bellevue

By: ............................................................

    Steven Sarkozy, City Manager

King County

By

Approved as to form: _____ Joseph B. Forlalla

for Norm Maleng

Key terms subject to County
Council approval. JBK

EXHIBIT A

OPERATIVE COMPLAINT

m28918-523563.2.doc
512255.1/018710.00006

M 28918
pldg

RECEIVED
CITY OF BELLEVUE
LEGAL DEPT

AUG 1 4 2003

**EXHIBIT A**

OPERATIVE COMPLAINT

**RECEIVED**

AUG 1 4 2003
11:20 am
CITY CLERK'S OFFICE
Provided to Virginia
Beverly City Clerk of
summons in same matter

AM
7,8,9,10,11,12,1,2,8,4,5,6 PM

## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF WASHINGTON
## AT SEATTLE

| | |
|---|---|
| NEWPORT YACHT CLUB, a Washington nonprofit corporation, individually and on behalf of its members, WILLIAM S. WEINSTEIN AND LEANNE C. WEINSTEIN, and their marital community,<br><br>Plaintiffs,<br><br>v.<br><br>THE CITY OF BELLEVUE, a Washington municipal corporation, and KING COUNTY, a political subdivision of the state of Washington,<br><br>Defendants. | NO. C03-2534Z<br><br>COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF, AND FOR DAMAGES |

## I. PARTIES

1.1    Plaintiff Newport Yacht Club, Inc. is a Washington corporation with its principal place of business located in Bellevue, King County, Washington. The Newport Yacht Club owns and operates a marina on Lake Washington, adjacent to the outfall of Coal Creek. The members of Newport Yacht Club reside in the neighborhood that abuts the creek, marina, and lake. The marina operates solely through membership fees and donations. Newport Yacht Club is responsible for the maintenance of its entry to the Grand canals located adjacent to the outfall of Coal Creek and of the canals generally that run behind its residents' and members' homes.

COMPLAINT - 1

LAW OFFICES
SHORT CRESSMAN & BURGESS PLLC
999 THIRD AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98104-4088
(206) 682-3333

456491.1/018710.00006

COPY

1.2     Plaintiffs William S. and Leanne C. Weinstein are residents of Bellevue, King County, Washington. The Weinsteins own real property located on Lake Washington near the outfall of Coal Creek.

1.3     Defendant the City of Bellevue is a Washington municipal corporation organized under RCW Title 35A, the Optional Municipal Code.

1.4     Defendant King County is a political subdivision of the state of Washington.

## II. STATEMENT OF JURISDICTION

2.1     Jurisdiction lies with this Court for citizen suits brought to enforce the Clean Water Act (the "Act") against parties who discharge pollutants in violation of the Act under 33 U.S.C. § 1365(a).

2.2     This Court also has supplemental jurisdiction to hear the plaintiffs' state law claims of nuisance and trespass against the defendants arising from the same facts and circumstances as those giving rise to the plaintiffs federal claims under 28 U.S.C. § 1367(a).

2.3     Plaintiffs have suffered an actual or threatened injury as a result of the acts or omissions of the defendants.

2.4     Plaintiffs' injury is fairly traceable to the defendants' acts or omissions.

2.5     Plaintiffs' injury will likely be redressed if they prevail in their lawsuit.

## III. FACTUAL ALLEGATIONS

3.1     The City of Bellevue (the "City") and King County (the "County") own and maintain stormwater and sedimentation facilities upstream of Newport Yacht Club. Because the facilities were not designed correctly and have not been maintained correctly, large amounts of polluted waters are released from these facilities to the detriment of the plaintiffs who own property downstream. These stormwater facilities have artificially collected and discharged surface water onto plaintiffs' property in quantities greater than or in a manner different from the natural flow of water onto that property.

COMPLAINT - 2

LAW OFFICES
SHORT CRESSMAN & BURGESS PLLC
999 THIRD AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98104-4088
(206) 682-3333

456491.1/018710.00006

3.2      In January 1986 Newport Shores was flooded and the City's Manager declared an emergency. The following month, the City began the design of the I-405/Coal Creek stormwater retention pond, although it would be another eight years before it began construction of the pond.

3.3      In the mid-1980s the City and County entered into an agreement with King County Metro to prepare a Basin Plan for the management of Coal Creek basin. The City and the County began implementing the Coal Creek Basin Plan in early 1988, building a series of detention ponds and other facilities.

3.4      In August 1986 the County constructed the Coal Creek Parkway Detention Pond. In August 1987 the City constructed the Newport Shores Channel Berms project to minimize flooding in Newport Shores.

3.5      In August 1988 the County constructed the Cinder Mines detention pond site. In late 1989 the City completed the Upper Main Channel Stabilization project on Coal Creek. The Lower Newport Hills Channel Stabilization project was not commenced until mid-1994.

3.6      Throughout 1990 - 1992 the City and County constructed the Newport Hills outfalls 1 through 7. A January 1990 storm generated 100-year flows in Coal Creek, and six homes suffered flood damage. Less than a year later, another storm generated 50-year flows in Coal Creek, although the flood damage was not as severe.

3.7      Each of the foregoing described stormwater facilities has artificially collected and discharged surface water onto plaintiffs' property in quantities greater than or in a manner different from the natural flow of water onto that property.

3.8      In February 1996 a landslide at Cedar Mines introduced 10,000 - 15,000 cubic yards of coal mine tailings into the Coal Creek. The peak flow of tailings-laden stormwater through Newport Shores was estimated to be 450 cubic feet per second. In an effort to stabilize the eroding tailings, in September 1996 the County installed a boulder and woody debris check dam at Cinder Mines. On November 24 and 25, 1996 heavy rains resulted in significant erosion

COMPLAINT - 3

LAW OFFICES
SHORT CRESSMAN & BURGESS PLLC
999 THIRD AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98104-4088
(206) 682-3333

456491.1/018710.00006

at the golf course that was under construction in Newcastle. Sediment-laden stormwater entered Coal Creek. Just after Christmas, following two more days of heavy rain, the Coal Creek Parkway sediment basin was full. The City failed to empty the sediment from the basin.

3.9    Runoff scours the ravine, eroding the banks and sending sand, soil, and rocks downstream. The water, soil, sediment, and rocks wind up in sediment basins and sediment ponds owned and/or operated by the City and County. The basins fill up and the sediment overflows and discharges down Coal Creek and into Lake Washington.

3.10    The County owns and operates an area commonly known as the Cinder Mine, located approximately 3.5 miles upstream from the mouth of Coal Creek, which discharges into Lake Washington. Coal Creek flows through the Cinder Mine. The property contributes large amounts of sediment to Coal Creek. The County has not managed its property to prevent large quantities of sediment to reach Coal Creek and Lake Washington. The County also operates Phase I of its stormwater detention pond at the Cinder Mine, collecting sediment-laden stormwater runoff from the Cinder Mine and discharging it into Coal Creek.

3.11    The City owns and operates two sedimentation ponds that collect stormwater runoff and channel it into Coal Creek. The overburdened stormwater retention facilities have scoured the banks of Coal Creek, causing the discharge of soil and sediment into Coal Creek and Lake Washington, particularly following rain events.

3.12    During and after rain events, pollutants including soil, sediment, tailings, silt, coal cinders, dibenzofuran, and 2-methylnaphthalene are discharged from the Cinder Mine into Coal Creek and then discharged into Lake Washington. The discharges into Coal Creek and Lake Washington are ongoing and regular, and have occurred for much of the last decade.

3.13    Uncontrolled silt-laden stormwater flows through Coal Creek and detrimentally impacts the water quality of the waters used and enjoyed by the plaintiffs,

COMPLAINT - 4

LAW OFFICES
SHORT CRESSMAN & BURGESS PLLC
999 THIRD AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98104-4088
(206) 682-3333

456491.1/018710.00006

3.14   The sediments carried in the uncontrolled stormwater are contaminated with substances associated with coal combustion, collected in the Cinder Mine area, Newport Hills, and Lake Heights, channeled into Coal Creek, and then discharged into Lake Washington. The sediment is deposited across the lake bed at the mouth of Coal Creek Canal and the entrance to Newport Yacht Club's marina. The estimated 100,000 cubic yards of accumulated sediment have resulted in the degradation of the water quality of Coal Creek and the waters of Lake Washington, the loss of use of certain slips at the marina, and the interference with navigation and the use of the Yacht Club facilities.

3.15   The stormwater exceeds the capacity of lower Coal Creek and regularly floods the Weinsteins' property at the mouth of the creek during heavy winter rains. When the flood waters recede, sediment – up to a foot deep – is left behind on the Weinsteins' property. Areas buried by the sediment include areas that used to serve as the Weinsteins' front lawn adjacent to Lake Washington and Coal Creek. More than 150,000 cubic yards of sediment have been discharged onto the Weinsteins' property. The Weinsteins' house is sinking; if it continues to sink, eventually it will be rendered uninhabitable. Several windows have broken; doors and windows no longer fit in their frames; and the home's foundations and rook supports are cracking or moving. The Weinsteins' children cannot swim in Lake Washington in front of their property because of the contaminated materials deposited there.

3.16   The accumulated sediment has resulted in the degradation of the water quality of Coal Creek and Lake Washington adjacent to the Weinsteins' real property, damaged the Weinsteins' real property, interfered with the reasonable use and enjoyment of the Weinsteins' real property, and diminished the value of the Weinsteins' real property.

3.17   The sedimentation on the Newport Yacht Club's property that is caused by the excessive silt-laden discharges from Coal Creek detrimentally affects the Club's property as well as the waters of Lake Washington. The sediment is a pollutant that has changed and continues to

COMPLAINT - 5

LAW OFFICES
SHORT CRESSMAN & BURGESS PLLC
999 THIRD AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98104-4088
(206) 682-3333

456491.1/018710:00006

change the temperature of the Lake, and the taste, color, and turbidity of the water. The sediment has also damaged the navigability of the Lake. The sediment also has detrimentally affected the near-shore habitat of salmon and bull-trout that are protected under federal law.

3.18     By letter dated December 30, 2002 plaintiffs Weinstein gave notice to the Administrator of the United States Environmental Protection Agency, the Director of the Washington State Department of Ecology, and the County of its intent to sue for violations under the Clean Water Act. More than 60 days have passed since the date of the letter.

3.19     By letter dated March 14, 2003, 2003 plaintiff Newport Yacht Club gave notice to the Administrator of the United States Environmental Protection Agency, the Director of the Washington State Department of Ecology, the City and the County of its intent to sue for violations under the Clean Water Act. More than 60 days have passed since the date of the letter.

3.20     By claim dated March 17, 2003 plaintiff Newport Yacht Club gave notice to the City of its claim for damages arising from the acts and omissions of the City and its agents. More than 60 days have passed since the claim was served on the City.

3.21     By claim dated March 17, 2003 plaintiff Newport Yacht Club gave notice to the County of its claim for damages arising from the acts and omissions of the County and its agents. More than 60 days have passed since the claim was served on the County.

3.22     Plaintiffs Weinstein gave notice to the City of its claim for damages arising from the acts and omissions of the City. More than 60 days have passed since the claim was served on the City.

3.23     Plaintiffs Weinstein gave notice to the County of its claim for damages arising from the acts and omissions of the County. More than 60 days have passed since the claim was served on the County.

COMPLAINT - 6

LAW OFFICES
SHORT CRESSMAN & BURGESS PLLC
999 THIRD AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98104-4088
(206) 682-3333

### IV. FIRST CAUSE OF ACTION: DECLARATORY RELIEF UNDER THE CLEAN WATER ACT (33 U.S.C. §§ 1311(a) and 1412)

4.1     Plaintiffs reallege and incorporate by this reference the facts alleged in paragraphs 1.1 through 3.23.

4.2     The sediment discharged by the City and County into the waters of Coal Creek and Lake Washington constitutes a pollutant under the CWA.

4.3     Neither the City nor the County has a permit to discharge pollutants into waters of the United States.

4.4     The City and the County have discharged, and continue to discharge pollutants into waters of the United States without a permit in violation of the CWA.

4.5     The plaintiffs are entitled to a declaration by this Court that the City and County have violated and continue to violate the CWA.

### V. SECOND CAUSE FOR RELIEF: INJUNCTIVE RELIEF UNDER THE CLEAN WATER ACT

5.1     Plaintiffs reallege and incorporate by this reference the facts alleged in paragraphs 1.1 through 4.5.

5.2     Defendants have failed to obtain a permit to discharge pollutants into Lake Washington.

5.3     Defendants have failed to implement minimum control measures to reduce pollutants discharging into Lake Washington.

5.4     Defendants have discharged and continue to discharge pollutants into waters of the United States without a permit.

5.5     Plaintiffs are entitled to an order enjoining further discharges by defendants of pollutants into waters of the United States without a permit.

5.6     Plaintiffs are entitled to an order compelling the City and County to implement minimum control measures to reduce pollutants discharging into Lake Washington.

COMPLAINT - 7

LAW OFFICES
SHORT CRESSMAN & BURGESS PLLC
999 THIRD AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98104-4088
(206) 682-3333

456491.1/018710.00006

## VI.  THIRD CLAIM FOR RELIEF:  VIOLATIONS OF THE SOLID WASTE DISPOSAL ACT (42 U.S.C. §§ 6925 and 6972; RCW 70.95, 70.105 and 70.105D; WAC 173-303 and 173-304)

6.1     Plaintiffs reallege and incorporate by this reference the facts alleged in paragraphs 1.1 through 3.23.

6.2     The area known as the Cinder Mine is covered with hazardous wastes that pose a substantial present or potential hazard to human health or the environment.

6.3     The hazardous wastes present at the Cinder Mine also constitute dangerous wastes and/or solid wastes.

6.4     Hazardous and/or solid wastes are collected, treated, stored, and disposed by the County into the ground beneath the stormwater detention pond located in the Cinder Mine area. Hazardous and/or solid wastes are also collected, treated, stored, and disposed by the County into Coal Creek from the detention pond.  Hazardous and/or solid wastes are also collected, treated, stored, and disposed by the County into Coal Creek from the Cinder Mine area (including the stream banks composed of coal mining waste) and the abandoned coal seams at the site.

6.5     The County has no state- or federally-issued permit allowing these collection, treatment, storage or disposal activities.

6.6     The County is operating a facility for the treatment, storage, or disposal of hazardous and/or solid waste in violation of 42 U.S.C. § 6925, and Chapters 70.95, 70.105 and 70.105D RCW.

6.7     The County is a person who has contributed to or is contributing to the past or present handling, storage, treatment, transportation or disposal of solid or hazardous waste which may present an imminent and substantial endangerment to human health or the environment.

6.8     Plaintiffs are entitled to an order compelling the County to immediately cease and desist its handling, storage, treatment, transportation and disposal of solid or hazardous waste without a permit and to abate the imminent and substantial threat to human health and the environment.

COMPLAINT - 8

LAW OFFICES
SHORT CRESSMAN & BURGESS PLLC
999 THIRD AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98104-4088
(206) 682-3333

456491.1/018710.00006

## VII.  FOURTH CLAIM FOR RELIEF:  ENDANGERED SPECIES ACT VIOLATIONS (16 U.S.C. § 1538(a)(1)(b))

7.1     Plaintiffs reallege and incorporate by this reference the facts alleged in paragraphs 1.1 through 3.23.

7.2     Protected Chinook Salmon live in Coal Creek and downstream from Coal Creek in Lake Washington.

7.3     Protected Bull Trout live in Lake Washington downstream of Coal Creek.

7.4     The acts or omissions of the City and County in discharging pollutants and hazardous wastes into Coal Creek and lake Washington has interfered with, and continues to interfere with, the Chinook Salmon's and the Bull Trout's spawning, feeding, rearing and migrating behaviors, which are essential biological functions, and has prevented and continues to prevent the recovery of the species.

7.5     The acts or omissions of the City and County have caused, or likely will cause, adverse habitat modification and degradation resulting in death or the threat of death or bodily harm to protected species in violation of the Endangered Species Act, 16 U.S.C. § 1538(a)(1)(b).

7.6     Plaintiffs are entitled to an order compelling the City and County to immediately cease and desist their violations of the Endangered Species Act, 16 U.S.C. § 1538(a)(1)(b).

## VIII.  FIFTH CLAIM FOR RELIEF:  CONTINUING TRESPASS

8.1     Plaintiffs reallege and incorporate by this reference the facts alleged in paragraphs 1.1 through 3.23.

8.2     The acts or omissions of the defendants have resulted in the deposit of contaminated sediment on the real property of the plaintiffs.

8.3     The condition causing the deposit of contaminated sediment on the plaintiffs' real property is abatable, and the damage to the plaintiffs' property may be remedied.

COMPLAINT - 9

LAW OFFICES
SHORT CRESSMAN & BURGESS PLLC
999 THIRD AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98104-4088
(206) 682-3333

456491.1/018710.00006

8.4     The defendants have a continuing duty to remedy the upstream conditions that cause the sediment to be deposited on plaintiffs' properties and to remove the sediment that has accumulated there already.

8.5     The defendants' acts and omissions have proximately caused harm to the plaintiffs' real property in an amount to be proven at trial.

## IX. SIXTH CLAIM FOR RELIEF: NUISANCE

9.1     Plaintiffs reallege and incorporate by this reference the facts alleged in paragraphs 1.1 through 3.23.

9.2     The acts or omissions of the defendants have permitted or suffered to be thrown in, run, drained, allowed to seep or otherwise discharged into state waters an organic or inorganic matter that causes or tends to cause pollution of such waters in violation of RCW 90.48.080, the Washington Water Pollution Control Act.

9.3     The acts or omissions of the defendants have annoyed, injured or endangered the comfort, repose, health or safety of the plaintiffs and unlawfully interfered with, obstructed or tended to obstruct, or rendered dangerous for passage a lake or navigable river, and rendered the plaintiffs insecure in the use of their property in violation of RCW Title 7.48.

9.4     The acts or omissions of the defendants have unreasonably interfered with plaintiffs' use and enjoyment of their property.

9.5     The acts or omissions of the defendants constitute a nuisance and a nuisance *per se*.

9.6     The acts or omissions of the defendants have proximately caused harm to the plaintiffs in an amount to be proven at trial.

WHEREFORE, having alleged the foregoing facts and causes of action against the defendants, the plaintiffs pray for the following relief:

COMPLAINT - 10

LAW OFFICES
SHORT CRESSMAN & BURGESS PLLC
999 THIRD AVENUE, SUITE 3000
SEATTLE, WASHINGTON 98104-4088
(206) 682-3333

456491.1/018710.00006

## X.  PRAYER FOR RELIEF

1.      A declaration by the Court that the defendants have violated and continue to violate the CWA;

2.      An order enjoining the defendants from continuing to discharge pollutants into Coal Creek and Lake Washington without a permit;

3.      An order compelling the defendants to obtain permits required by the Clean Water Act and to implement minimum control measures to reduce pollutants discharging into Lake Washington;

4.      An order compelling the County to immediately cease and desist its handling, storage, treatment, transportation and disposal of solid or hazardous waste without a permit and to abate the imminent and substantial threat to human health and the environment.

5.      An order compelling the defendants to immediately cease and desist their violations of the Endangered Species Act;

6.      Damages for and/or abatement of continuing nuisance;

7.      Damages for and/or abatement of continuing trespass;

8.      Attorney's fees and costs incurred in bringing this suit pursuant to 33 U.S.C. § 1365(d), 16 U.S.C. § 1540(g), and RCW 70.105D.080; and

9.      Such other and further relief as the Court deems just and equitable.

DATED this _11th_ day of August, 2003.

SHORT CRESSMAN & BURGESS PLLC

By _____
Connie Sue Martin, WSBA No. 26525
Attorneys for Newport Yacht Club, Inc.

BRICKLIN NEWMAN DOLD, LLP

By _____
David Bricklin, WSBA No. 7583
Attorneys for the Weinsteins

COMPLAINT - 11

456491.1/018710.00005

08/04/04

EXHIBIT B

LEGAL DESCRIPTIONS OF
COAL CREEK PARK & SURREY DOWNS

A. COAL CREEK PARK

Will be supplied subsequently by mutual agreement of the City and County

B. SURREY DOWNS

Will be supplied subsequently by mutual agreement of the City and County

- 18 -

## EXHIBIT C

### Coal Creek
### Stabilization

Having considered the plaintiffs' claims and after conducting additional field reconnaissance of the watershed, King County and the City of Bellevue developed the following list of projects to address erosion, sedimentation and flooding issues in the Coal Creek basin.

| Source Control | Estimated Cost |
|---|---|
| Upper Reach Bank & Slope Stabilization (Cinder Mines) [1] | $   600,000 |
| Middle Reach Bank Stabilization [2] | $   700,000 |
| Overbank erosion from upslope runoff (Cinder Mine Area) [3] | $   500,000 |
| Overbank erosion from outfalls (Bellevue areas) [4] | $   475,000 |
| Bed Grade Controls (I-405 to Newcastle Rd) [5] | $   800,000 |

| Sediment Removal | |
|---|---|
| Add 1,100 CY of Sediment Capture at or near the I-405 Pond [6] | $   700,000 |
| | $  3,775,000 |

Total Basin Stabilization Costs (Capital)

Notes
(1)   KCM/GeoEngr's Cindermine Assessment, April 2003. Approx. 975 LF of bank stabilization identified.
(2)   Stabilizes eroding stream banks between I-405 and Coal Creek Parkway.
(3)   Addresses overbank erosion from storm drain outfalls, primarily in Cinder Mine area.
(4)   Addresses overbank erosion from storm drain outfalls within Bellevue city limits.
(5)   Assumes root wad/boulder/log grade controls similar to those constructed by King County at Cinder Mines.
(6)   Existing basin-wide sediment volume = 1,900 CY. Increases total sediment volume to 3,000 CY.

St/04082004
Coal Creek Stabilization Cost Summary Offer.doc

- 19 -

## EXHIBIT D

## <u>WEINSTEIN PROPERTY LEGAL DESCRIPTION</u>

LOT 14 IN BLOCK 2 OF NEWPORT DIVISION 3, ACCORDING TO THE PLAT RECORDED IN VOLUME 95 OF PLATS AT PAGES 42 THROUGH 44, RECORDS OF KING COUNTY, STATE OF WASHINGTON.

m28918-523563.2.doc
512255.1/018710.00006

## EXHIBIT E

## WEINSTEIN NORTH PROPERTY LEGAL

LOT 15 IN BLOCK 2 OF NEWPORT DIVISION 3, ACCORDING TO THE PLAT RECORDED IN VOLUME 95 OF PLATS AT PAGES 42 THROUGH 44, RECORDS OF KING COUNTY, STATE OF WASHINGTON.

- 21 -

## EXHIBIT F

## ESCROW INSTRUCTIONS

BERM / SALMON ESCROW ACCOUNT

&

DREDGE ESCROW ACCOUNT

- 22 -

# BERM / SALMON CHANNEL
# ESCROW AGREEMENT

This Berm / Salmon Channel Escrow Agreement ("Escrow Agreement") is made this _____ day of _____, 2004, by and among William S. Weinstein, Leanne C. Weinstein and their marital community ("Weinstein"), The City of Bellevue Washington, a Washington municipality ("City"), King County, Washington ("County") and Stewart Title Insurance Company, Inc., a _____ corporation ("Escrow Holder"). Weinstein, City and County have entered into that certain Settlement Agreement dated August __, 2004 (the "Settlement Agreement") concerning the lawsuit captioned *Newport Yacht Club, Inc., William S. Weinstein and Leanne C. Weinstein v. The City of Bellevue and King County*, Cause No. CO3-2534, United States District Court for the Western District of Washington, a copy of which Settlement Agreement is attached hereto at Exhibit A.

1. Pursuant to Section 6 of the Settlement Agreement, County shall deposit Two Hundred and Fifty Thousand Dollars ($250,000.00) (the "Berm / Salmon Channel Payment") with Escrow Holder. Escrow holder shall deposit and maintain the Berm/Salmon Channel Payment in an interest bearing account with any interest payments to be re-deposited in the account.

2. From time to time, Weinstein may submit a request to draw funds ("Draw Request") from the Escrow to pay or reimburse costs in accordance with Sections 6 and 11 of the Settlement Agreement. Weinstein may also submit a Draw Request to pay any income tax liability incurred by Weinstein due to the interest earned on the Escrow Account. Escrow Holder shall disburse only accrued interest to pay any such Draw Request for income tax liability associated with interest earned in the Escrow Account. In no event shall Escrow Holder disburse principal to pay any income tax liability Draw Requests.

3. The Draw Request shall: (a) be submitted to Escrow Holder in letter format with a concurrent copy to the City and County; (b) provide a reasonably detailed description of the work covered by the Draw Request showing that the work and/or disbursement is for the design, permitting, construction, operation, or maintenance of the flood control berm or salmon channel described in Section 6 of the Settlement Agreement; (c) provide copies of invoices and such other backup documentation as reasonably necessary to evidence the work; and (d) contain a certification by Weinstein that the work for which the funds are requested complies with the terms and conditions of the Settlement Agreement. Escrow Holder shall disburse to Weinstein the amounts requested in a Draw Request within sixty (60) days of receipt until this Escrow Account and any interest thereon has been fully paid out, provided that Escrow Holder shall make no disbursement until at least ten (10) days after receipt of the Draw Request. . If Escrow Holder receives an objection from City or County within

- 1 -

Final

the ten (10) period, Escrow Holder shall not pay that portion of the Draw Request to which the objection is made until a further joint payment direction is received signed by Weinstein, the City and County authorizing the payment. Weinstein, the City and the County shall resolve any such objection in accordance with the Dispute Resolution provisions of Section 15 of the Settlement Agreement which are hereby incorporated by reference.

The City and County may only object to a Draw Request if the Draw Request is not for work described in Sections 6.4 or 11.1 of the Settlement Agreement, or if the Draw Request does not provide sufficient detail to determine if the Draw Request is for work described in Sections 6.4 or 11.1 of the Settlement Agreement.

4. The initial fee to establish the Escrow Account is Five Hundred Dollars ($500.00) which shall be deducted from the Berm/Salmon Channel Payment. Escrow Holder shall be allowed to charge an administrative fee of not more than Twenty Dollars ($20.00) per Draw Request. The Draw Request shall include a line item for such administrative fee which shall be paid from the draw.

5. This Escrow Account is established solely for the benefit of Weinstein, the City and the County. Escrow Holder shall only disburse funds to Weinstein and shall have no obligation to make any disbursements to any other parties.

6. All notices to be given pursuant to this Agreement shall be in writing and furnished to the other party at its address listed below (or at such other address as may be specified from time to time by notice from the addressee to the other party) and shall be deemed to have been duly given the day delivered to the addressee at the address below or transmitted by confirmed facsimile transmission to the addressee at the facsimile number below, or three (3) days after having been sent by regular and certified or registered U.S. mail, postage prepaid to addressee at the address below:

   If to Weinstein:

   William S. Weinstein
   73 Skagit Key
   Bellevue, WA  98006
   Fax: (206) 269-3489

- 2 -

Final

with a copy to:

David A. Bricklin, Esq.
Bricklin Newman Dold
1424 Fourth Avenue, Suite 1015
Seattle, WA 98101
Fax: (206) 621-0512

If to City:

Myrna Bascich
City Clerk
City of Bellevue
11511 Main Street
Bellevue, WA 98009-9012Fax: (425) 452-7919

with a copy to:

Elaine Spencer
Graham & Dunn
Pier 70
2801 Alaskan Way, Suite 300
Seattle, WA 98121
Fax: 206-340-9599

If to County:

Mark Isaacson
Department of Natural Resources and Parks
King Street Center
201 South Jackson Street, Suite 600
Seattle, Washington 98104-3855
Fax:  206-296-0192

with a copy to:

Joseph Rochelle, Esq.
Office of King County Prosecuting Attorney
900 King County Administration Building
500 Fourth Avenue
Seattle, Washington 98104
Fax:  206-296-0421

- 3 -

Final

Such communications shall be deemed received on the earlier of the date of actual receipt or upon automatic or telephone confirmation of receipt by facsimile. Each party to this Agreement may change its notice address set forth in this Section by giving notice of a new address to the other party in accordance with this Section.

7. In the event of a dispute between any of the parties regarding disbursement of all or any part of the Escrow, Escrow Holder may interplead the Escrow in the United States District Court for the Western District of Washington in accordance with the District's Court's continuing jurisdiction over the Settlement Agreement. Escrow Holder's reasonable costs incurred to file any such interpleader may be paid from the Berm / Salmon Channel Payment. Weinstein, the City and County each agree to indemnify and hold Escrow Holder harmless from any claims or liability for any act of Escrow Holder done in accordance with this Escrow Agreement except for claims or liability arising from Escrow Holder's negligence or failure to comply with these instructions.

**NEWPORT YACHT CLUB, INC.:**

By: _____
    Steven Cole
Its: Commodore:

**KING COUNTY**

By:_____
Its:_____

**CITY OF BELLEVUE:**

By: _____
    Steven Sarkozy
    City Manager

**STEWART TITLE INSURANCE COMPANY, INC.**

By: _____
Its: _____

- 4 -

Final

# EXHIBIT A

## [ATTACH COPY OF SETTLEMENT AGREEMENT]

512661.1/018710.00006
514134.1/018710.00006

# DREDGE
# ESCROW AGREEMENT

This Dredge Escrow Agreement ("Escrow Agreement") is made this _____ day of _____, 2004, by and among The Newport Yacht Club, Inc., a Washington corporation ("NYC"), The City of Bellevue Washington, a Washington municipality ("City"), and Stewart Title Insurance Company, Inc., a _____ corporation ("Escrow Holder"). NYC and City have entered into that certain Settlement Agreement dated August __, 2004 (the "Settlement Agreement") concerning the lawsuit captioned *Newport Yacht Club, Inc., William S. Weinstein and Leanne C. Weinstein v. The City of Bellevue and King County*, Cause No. CO3-2534, United States District Court for the Western District of Washington a copy of which is attached hereto at Exhibit A.

1. Pursuant to Section 9 of the Settlement Agreement, City shall deposit Seven Hundred Thousand Dollars ($700,000.00) (the "Dredge Payment") with Escrow Holder. Escrow holder shall deposit and maintain the Dredge Payment in an interest bearing account with any interest payments to be re-deposited in the account.

2. From time to time, NYC may submit a request to draw funds ("Draw Request") from the Escrow to pay or reimburse costs incurred in accordance with Sections 9 and 11 of the Settlement Agreement. NYC may also submit a Draw Request to pay any income tax liability incurred by NYC due to the interest earned on the Escrow Account. Escrow Holder shall disburse only accrued interest to pay any such Draw Request for income tax liability associated with interest earned in the Escrow Account. In no event shall Escrow Holder disburse principal to pay any income tax liability Draw Requests.

3. The Draw Request shall: (a) be submitted to Escrow Holder in letter format with a concurrent copy to City; (b) provide a reasonably detailed description of the work covered by the Draw Request showing that the work and/or disbursement is for the design, permitting, engineering, consulting, legal, construction, mitigation or monitoring costs of navigation maintenance dredging at the NYC marina, the entrance to the Grand Canal, the south side of D Dock at the NYC Marina, or the edges of the Coal Creek Delta; (c) provide copies of invoices and such other backup documentation as reasonably necessary to evidence the work; and (d) contain a certification by NYC that the work for which the funds are requested complies with the terms and conditions of the Settlement Agreement. Escrow Holder shall disburse to NYC the amounts requested in a Draw Request within sixty (60) days of receipt until the Escrow and any interest thereon has been fully paid out, provided that Escrow Holder shall make no disbursement until at least ten (10) days after receipt of the Draw Request. If Escrow Holder receives an objection from City within the ten (10) period, Escrow Holder shall not pay that portion of the Draw Request to which the objection is made until a further joint payment direction is received signed by both

- 1 -

NYC and City authorizing the payment.  NYC and City shall resolve any such objection in accordance with the Dispute Resolution provisions of Section 15 of the Settlement Agreement which are hereby incorporated by reference.

The City may only object to a Draw Request if the Draw Request is not for work described in Sections 9.2.2 or 11.1 of the Settlement Agreement, or if the Draw Request does not provide sufficient detail to determine if the Draw Request is for work described in Sections 9.2.2 or 11.1 of the Settlement Agreement.

4. The initial fee to establish the Dredge Escrow is Five Hundred Dollars ($500.00) which shall be deducted from the Dredge Payment.  Escrow Holder shall be allowed to charge an administrative fee of not more than Twenty Dollars ($20.00) per Draw Request.  The Draw Request shall include a line item for such administrative fee which shall be paid from the draw.

5. This Escrow is established solely for the benefit of NYC and City.  Escrow Holder shall only disburse funds to NYC and shall have no obligation to make any disbursements to any other parties.

6. All notices to be given pursuant to this Agreement shall be in writing and furnished to the other party at its address listed below (or at such other address as may be specified from time to time by notice from the addressee to the other party) and shall be deemed to have been duly given the day delivered to the addressee at the address below or transmitted by confirmed facsimile transmission to the addressee at the facsimile number below, or three (3) days after having been sent by regular and certified or registered U.S. mail, postage prepaid to addressee at the address below:

    If to NYC:

        Newport Yacht Club
        Attn: Commodore
        81 Skagit Key
        Bellevue, WA  98006
        Fax:  (425) 747-4023

        with a copy to:

        Paul Cressman, Jr.
        John J. Houlihan, Jr.
        Short Cressman & Burgess PLLC
        999 Third Avenue, Suite 3000
        Seattle, WA  98104-4088
        Fax:  (206) 340-8856

Final

If to City:

> Myrna Bascich
> City Clerk
> City of Bellevue
> 11511 Main Street
> Bellevue, WA 98009-9012
> Fax: (425) 452-7919

>> with a copy to:
>> Elaine Spencer
>> Graham & Dunn
>> Pier 70
>> 2801 Alaskan Way, Suite 300
>> Seattle, WA 98121
>> Fax: 206-340-9599

Such communications shall be deemed received on the earlier of the date of actual receipt or upon automatic or telephone confirmation of receipt by facsimile. Each party to this Agreement may change its notice address set forth in this Section by giving notice of a new address to the other party in accordance with this Section.

7. In the event of a dispute between any of the parties regarding disbursement of all or any part of the Escrow, Escrow Holder may interplead the Escrow in the United States District Court for the Western District of Washington in accordance with the District's Court's continuing jurisdiction over the Settlement Agreement. Escrow Holder's reasonable costs incurred to file any such interpleader may be paid from the Dredge Payment. NYC and City each agree to indemnify and hold Escrow Holder harmless from any claims or liability for any act of Escrow Holder done in accordance with this Escrow Agreement except for claims or liability arising from Escrow Holder's negligence or failure to comply with these instructions.

**NEWPORT YACHT CLUB, INC.:**               **CITY OF BELLEVUE:**

By: _____               By: _____
   Steven Cole                                      Steven Sarkozy
Its: Commodore:                                      City Manager

**STEWART TITLE INSURANCE COMPANY, INC.**
By: _____
Its: _____

- 3 -

512642.1/018710.00006
514133.1/018710.00006

Final

# EXHIBIT A

## [ATTACH COPY OF SETTLEMENT AGREEMENT]

512642.1/018710.00006
514133.1/018710.00006

EXHIBIT G

AERIAL PHOTOGRAPH MARKING
ROCKERY

m28918-523563.2.doc
512255.1/018710.00006



EXHIBIT G

AERIAL PHOTOGRAPH MARKING
ROCKERY

## EXHIBIT H

COVENANT NOT TO SUE FOR WEINSTEIN AND WEINSTEIN NORTH PROPERTY

- 24 -

EXHIBIT H

COVENANT NOT TO SUE FOR WEINSTEIN AND WEINSTEIN NORTH PROPERTY

**AFTER RECORDING MAIL TO:**
GRAHAM & DUNN PC
1420 Fifth Avenue, 33rd Floor
Seattle, WA 98101-2390
Attn: Elaine L. Spencer

---

| | |
|---|---|
| **Document Title(s):** | COVENANT NOT TO SUE |
| **Grantors:** | William S. Weinstein and Leanne C. Weinstein, and their marital community; and David K. Gottlieb, Trustee of the Weinstein Spendthrift Trust under agreement dated June 30, 1997 |
| **Grantees:** | City of Bellevue, a municipal corporation; and King County, a home rule charter county |
| **Legal Description:** | LOTS 14 AND 15 IN BLOCK 2 OF NEWPORT DIVISION 3, ACCORDING TO THE PLAT RECORDED IN VOLUME 95 OF PLATS AT PAGES 42 THROUGH 44, RECORDS OF KING COUNTY, STATE OF WASHINGTON. |
| **Property Tax Parcel Numbers:** | 606531-0400-08; 606531-0410-06 |

## COVENANT NOT TO SUE

WHEREAS, William S. Weinstein and Leanne C. Weinstein, and their marital community ("Weinstein"), have entered into a Settlement Agreement with The Newport Yacht Club, Inc., a Washington corporation ("NYC"), the City of Bellevue, Washington, a municipal corporation ("City"), and King County, Washington, a home rule charter county ("County"), relating to the Coal Creek Stabilization Project and the real property owned by Weinstein ("Property") which is located in Bellevue, King County, Washington, and is legally described on Exhibit A attached hereto.

NOW, THEREFORE, in consideration of the foregoing and the mutual promises, covenants and conditions set forth below and for other good and valuable consideration the receipt and sufficiency of which is hereby acknowledged, the parties agree as follows:

1.      Weinstein and the Weinstein Spendthrift Trust ("Trust") holding title to the Property, and their successors in interest and assigns in the Property, hereby fully release and agree not to sue the City or the County, their agents, directors, officers, employees, predecessors, successors, subsidiaries, affiliated corporations and assigns, with respect to any and all claims, demands, losses, expenses and causes of action, of any type, known or unknown, asserted or unasserted, and for any future claims, including damage claims resulting from the re-sedimentation of Coal Creek, arising from any actions, inactions or events like those alleged in that certain Complaint filed in King County Superior Court on August 11, 2003, under Cause No. CO3-2534, a copy of which is attached hereto as Exhibit B.

2.      This Covenant Not to Sue shall be enforceable as between the parties to the Settlement Agreement and against all subsequent purchasers or owners of the Property.

3.      The Parties intend that this Covenant Not to Sue shall bind successors who have actual or constructive notice of this Covenant, whether or not any value is given for the Property.

4.      This Covenant Not to Sue, including all provisions of this instrument, shall be considered as "touching and concerning the land" and shall run with title to the Property.

DATED as of this ____ day of _____, 2004.

*[SIGNATURES APPEAR ON THE FOLLOWING PAGE*

_____

WILLIAM S. WEINSTEIN


_____

LEANNE C. WEINSTEIN


_____

David K. Gottlieb, Trustee of the Weinstein
Spendthrift Trust under agreement dated
June 30, 1997


CITY OF BELLEVUE


By: _____
        Steven Sarkozy, City Manager


KING COUNTY


By: _____

Its:_____

Print Name:_____

STATE OF WASHINGTON            )
                              ) ss.
COUNTY OF KING                 )

     I certify that I know or have satisfactory evidence that WILLIAM S. WEINSTEIN is the person who appeared before me, and said person acknowledged that he signed this instrument, on oath stated that he executed the instrument and acknowledged it to be his free and voluntary act for the uses and purposes mentioned in the instrument.

     DATED this ____ day of _____, 2004.

                            _____
                            (Signature)

                            _____
                            (Please print name legibly)

                            NOTARY PUBLIC in and for the State of
                            Washington, residing at _____
                            My commission expires _____


STATE OF WASHINGTON            )
                              ) ss.
COUNTY OF KING                 )

     I certify that I know or have satisfactory evidence that LEANNE C. WEINSTEIN is the person who appeared before me, and said person acknowledged that she signed this instrument, on oath stated that she executed the instrument and acknowledged it to be her free and voluntary act for the uses and purposes mentioned in the instrument.

     DATED this ____ day of _____, 2004.

                            _____
                            (Signature)

                            _____
                            (Please print name legibly)

                            NOTARY PUBLIC in and for the State of
                            Washington, residing at _____
                            My commission expires _____.

4

STATE OF WASHINGTON )
                                                ) ss.
COUNTY OF KING                    )

    I certify that I know or have satisfactory evidence that STEVEN SARKOZY is the person who appeared before me, and said person acknowledged that he signed this instrument, on oath stated that he was authorized to execute the instrument and acknowledged it as the CITY MANAGER of THE CITY OF BELLEVUE, a municipal corporation, to be the free and voluntary act of such corporation for the uses and purposes mentioned in the instrument.

    DATED this _____ day of _____, 2004.

                      _____
                      (Signature)

                      _____
                      (Please print name legibly)

                      NOTARY PUBLIC in and for the State of Washington, residing at _____
                      My commission expires _____

STATE OF WASHINGTON            )
                                                       ) ss.
COUNTY OF KING                        )

    I certify that I know or have satisfactory evidence that _____ is the person who appeared before me, and said person acknowledged that he/she signed this instrument, on oath stated that he/she was authorized to execute the instrument and acknowledged it as the _____ of KING COUNTY, a home rule charter county, to be the free and voluntary act of such corporation for the uses and purposes mentioned in the instrument.

    DATED this _____ day of _____, 2004.

                      _____
                      (Signature)

                      _____
                      (Please print name legibly)

                      NOTARY PUBLIC in and for the State of Washington, residing at _____
                      My commission expires _____

STATE OF WASHINGTON          )
                             ) ss:
COUNTY OF KING               )

     I certify that I know or have satisfactory evidence that DAVID K. GOTTLIEB is the person who appeared before me, and said person acknowledged that he signed this instrument, on oath sated that he was authorized to execute the instrument, and acknowledged as the TRUSTEE OF THE WEINSTEIN SPENDTHRIFT TRUST UNDER AGREEMENT DATED JUNE 30, 1997 to be the free and voluntary act of said entity for the uses and purposes mentioned in the instrument.

     DATED this ____ day of _____, 2004.

                       _____
                       Print Name: _____
                       NOTARY PUBLIC in and for the State
                       of Washington, residing at _____
                       My commission expires _____

## EXHIBIT A

### Legal Description

LOTS 14 AND 15 IN BLOCK 2 OF NEWPORT DIVISION 3, ACCORDING TO THE PLAT RECORDED IN VOLUME 95 OF PLATS AT PAGES 42 THROUGH 44, RECORDS OF KING COUNTY, STATE OF WASHINGTON.

A-1